## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE, DIVISION

|  |  |  |
|---|---|---|
| MARK BAILEY, D. C., | § | United States District Court<br>Southern District of Texas<br>FILED<br><br>SEP 0 4 1997<br><br>Michael N. Milby, Clerk of Court |
| TODD BOYD, D. C., CURTIS COOK, D.C., | § | |
| ALEJANDRO LEAL, ROSA CARTRIGHT, | § | |
| D/B/A RITA'S HAIR DESIGN | § | |
| d/b/a EXCLUSIVE HAIR DESIGNS | § | |
| Plaintiffs, | § | |
|  | § | |
| VS. | § | CIVIL ACTION NO. |
|  | § | |
| DAN MORALES, as Attorney General | § | |
| of the State of Texas | § | B-97-206 |
| Defendant | § | |
|  | § | |
| In his Respective Official Capacity. | § | |

## PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM

Mark Bailey, D. C. ("Bailey"), Todd Boyd , D.C. ("Boyd"), Curtis Cook, D.C. ("Cook"), and

Alejandro Leal, d/b/a Xclusive Hair Designs, and Rosa Cartright, d/b/a/ Rita's Beauty Salon

Plaintiffs, and other numerous and potential Plaintiffs,  complain of Dan Morales, as Attorney

General of the State of Texas in his respective official capacity ("Defendant"), and respectfully

represent:

### A. JURISDICTION AND VENUE

1.     Plaintiffs' claim arises under the First Amendment as incorporated through the Due

Process provisions of the Fourteenth Amendment to the United States Constitution; the Equal

Protection provisions of the Fourteenth Amendment; 42 U.S.C. § 1983; and Article I, §§ 3 and 8 of

the Texas Constitution.  Plaintiffs seek the issuance of a temporary restraining order and of a

CNPDF - www.faxlio.com

preliminary and permanent injunction enjoining Defendant from enforcing the recent amendments to the Texas Penal Code, §§ 38.01 & 38.12 , through implementation of H.B. 1327, passed by the 75th Legislature, Regular Session, 1997, as signed by the Governor on June 17, 1997, and filed with the Secretary of State on June 17, 1997 (a true and correct copy attached as Exhibit "A").

2.     Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a judgment of this Court declaring H.B. 1327 unconstitutional, both facially and as applied to Plaintiffs.  Plaintiffs allege and complain that enforcement of H.B. 1327 would deprive Plaintiffs of rights secured by the Constitution of the United States.  As such, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper in the Southern District of Texas, Brownsville Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) in that Plaintiffs' claim substantially arises in the Southern District.  This Court also has pendent jurisdiction over Plaintiffs' claim that the Statutes violate Art. 1, §§ 3 and 8 of the Texas Constitution.

## B.  PARTIES & SERVICE

3.     Plaintiff Mark Bailey, D. C.  is a licenced chiropractor practicing at the, Sunrise Chiropractic, and has his principal office at 509 S. Expressway #83, Suite H-8, Harlingen, (Cameron County), Texas 78550.     Plaintiff  Todd Boyd.P.C. is a licensed Chiropractic Practicing at the Sunrise Chiropractic Clinc, at  at 2310 N. Expressway #83, Brownsville (Cameron County), Texas 78521,  Plaintiff Cook does business under the assumed name, Mission Chiropractic, at his principal office at Military Plaza Drive Shopping Center, 821 South West Military Drive, San Antonio, Texas 78221.  Plaintiff Alejandro Leal holds a Texas Cosmetology Operator License and does business under the assumed name

2

Xclusive Hair Designs, at 1502 N. Parkwood, Harlingen (Cameron County, Texas 78550.

Rosa Cartright holds a Texas Cosmetology Operators License and does business under the

assumed name, Rita's Beauty Salon in Weslaco, Texas. Licensed Chiropractors, Licensed

Cosmetologists and all others licensed certified or registered by a state agency that regulates

a healthcare profession are included within H.B. 1327's broad definition of "professional."

As "professionals" Plaintiffs are subject to H.B.1327 broad prohibition against

communication with patients and customers unless these customers first request

communication. As such, H.B. 1327 severely abridges Plaintiffs Constitutional right to share

truthful information with prospective patients and customers. More importantly, H.B. 1327

restricts societies practical access to truthful information limits the free flow of information

vital to our county's free market economy. Plaintiffs Bailey, Boyd, and Cook are licensed

chiropractors who market and/or solicit business from people who are more likely to need

chiropractic services than the general population. Plaintiff Leal and Cartright are is a

licensed cosmetologists.

    4.    This Complaint shall be served upon Defendant Dan Morales in his capacity

as Attorney General of the State of Texas, by serving him by Federal Express and by

facsimile at 512-463-2063 at the Attorney General's Office, General Litigation, Attention

Toni Hunter, Chief, Price Daniel, Sr. Bldg., 209 W. 14th & Colorado Streets, P. O. Box 12548,

Austin, Texas 78711-2548. Defendant Morales is acting or has threatened to act under color

of Texas law, including more specifically, enforcing the Barratry Statute as amended by H.B.

*161*

1327.

## C. BACKGROUND

5.     During the 1997 legislative session, the Texas Legislature passed and the Governor signed into law House Bill 1327 (a true and correct copy of which is attached as Exhibit "A") (House Bill 1327, including the Texas Penal Code §§ 38.01 & 38.12 which they amend, are cumulatively referred to hereinafter as "H.B. 1327").

6.     H.B. 1327, violates Plaintiffs' First Amendment rights as incorporated through the 14th Amendment to the United States Constitution, as well as the Equal Protection provisions of the Fourteenth Amendment.  Plaintiffs' rights hereunder are secured pursuant to 42 U.S.C. § 1983 and § 1988.  Also, Plaintiffs allege that H.B. 1327 abridge their free speech and free press rights secured by Art. I, § 8 of the Texas Constitution and the right to equal protection under the law secured by Art. I, § 3 of the Texas Constitution.  Plaintiffs facially challenge the Statutes as an abridgment of their constitutional rights.  *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750 (1988) (permitting a facial attack under circumstances similar to those in the instant case).

## D.  H.B. 1327

7.     H.B. 1327 bars a Professional (as defined) at H.B. 1327(12) from communicating with a prospective patient or customer, in-person or by telephone, about a particular occurrence or event or an existing problem of the prospective client, unless the prospective client or a member of the prospective client's family has requested or initiated

4

/62

CItaPDF - www.texta.com

the communication (Subdivision 11, H.B. 1327).  These prohibited communications apply to direct communications by the Professional  as well as indirect communications through association or financing of others to perform such communications if others "accept anything of value" stemming from the communication. (Section 2,  H.B. 1327).

8.     H.B. 1327 includes certain narrow exceptions to this blanket prohibition: namely, communications initiated by a family member of the person receiving a communication, a communication by a professional who has a prior or existing professional-client relationship with the person receiving the communication, or certain communications by an attorney for a nonprofit organization (Subdivision 11, H.B. 1327).  The "public media" is also excluded from H.B. 1327's prohibitions; so by implication, the  "non-public media" is included within H.B. 1327's prohibitions.

9.     H.B. 1327 also <u>does not</u> target or limit its application to misleading or deceptive communications. Instead, H.B. 1327 operates as a complete and total ban against the proscribed communications; and no warnings or disclosures made with the communication, regardless of how truthful or informative the communication may be,  can rescue the communicator from committing an offense  under the broad sweep of H.B. 1327's definition of "Solicit employment".   In fact, truthful communications in violation of H.B. 1327's ban on free speech constitute a third degree felony. Texas Penal Code §38.12(f).

### E.  H.B. 1327's ADVERSE EFFECT ON
### PLAINTIFFS' LIVELIHOOD AND CONSTITUTIONAL RIGHTS

10.     Plaintiffs Mark Bailey, D. C., Todd Boyd, D.C., and Curtis Cook. D.C. are

*163*

Chiropractors licensed by the State of Texas, whose past and intended future communications will run afoul of H.B. 1327 unless this Court enjoins enforcement of H.B. 1327, which became effective on September 1, 1997.

11.    As set forth in the affidavit of Mark Bailey, D.C., (attached as Exhibit "B") Bailey has operated a multi-chiropractic clinic in the Cameron County, Texas area early 1993.    Bailey has attempted to grow this chiropractic practice.    Bailey's affidavit demonstrates how enforcement of H.B. 1327 violates his constitutional rights and will cause immediate and irreparable harm to Bailey and those similarly situated:

> While I advertise in various ways, I believe that H.B. 1327 would prohibit me from providing truthful and informative information to prospective patients. Because I value my license and do not want to commit a third degree felony under any circumstances, H.B. 1327 will greatly limit my freedom to share truthful information with people who need and generally appreciate the information.
>
> For example, I have visited senior citizens centers to talk to people about old age, arthritis, and chiropractic care. I have tried to make people aware of how chiropractic may help them. It is my understanding that H.B. 1327 would make it a third degree felony to communicate with these people about their problems.
>
> I have also contacted and visited with numerous employers regarding injuries to their employees, asking that they identify employees with problems that chiropractic might help and refer those employees to my clinic. I reference various studies that show the economic value to the employer from reduced costs to them from chiropractic as compared with traditional medical, or the absence of medical care. I also provide them with reference to studies that show that chiropractic care often returns injured employees back to work more quickly than no care or other medical methods. These employers sometimes identify an employee or employees with various medical problems and I will then visit with those employees. It is my understanding that under H.B. 1327 I could not communicate in this manner. It is also my understanding that because of the economic benefit to employers for referring their injured workers to me, that under H.B. 1327 the employers could also be in violation. Further, if I treat people referred in such a manner, I could also be guilty of committing a third degree felony and lose my license.

6

Also, we market by employing telemarketers to provide information to people who have suffered an injury, or who are burdened with a medical problem. The information is completely honest and truthful, and I am unaware of any complaint even suggesting that the information is not informative, truthful, and helpful. It is my understanding that H.B. 1327 also prohibits any type of telemarketing to people who recently suffered an accident, or who have a condition or problem that make it likely that they would benefit from chiropractic. On the other hand, I understand that it is perfectly acceptable to telephone people who are in perfect health and suggest that they should consider chiropractic treatment. This doesn't make any sense and interferes with our right to provide truthful information to our patients. Many of my patients have repeatedly thanked me for contacting them and have benefited from the information and treatment. Without the information, in a practical sense they would not have received the treatment.

I provide only truthful, non-deceptive information, and I am unaware of even an allegation to the contrary. Because of H.B.1327's broad prohibition on communicating with prospective patients, my right to communicate freely with prospective patients has been greatly diminished. More importantly, many people who could benefit from health care will go untreated because of the absence of truthful information regarding available medical treatments.

12.   Plaintiff Boyd's concerns over enforcement of H.B. 1327 are similar, as set forth in Boyd's affidavit attached as Exhibit "C".

Sunrise Chiropractic employs staff members to identify individuals who are more likely to require medical treatment than the population at large, and to make them aware of the opportunity to receive chiropractic care. This marketing is based in part on accident reports, work related injuries and other information identifying potential patients who are more likely to need chiropractic care than the general population.

Many people suffer minor injuries, but are unaware of the availability of medical care. If a patient receives an injury, the sooner the medical treatment begins, the better. The telephonic marketing is quick and simple. My patients have repeatedly thanked me for treating them and have indicated their appreciation of our staff for making them aware of the fact that medical care is available even if they don't have a lot of money or personal health insurance.

Of course, some of the insurance companies would rather settle prior to our patients becoming aware of the extent of their injuries, or receiving treatment. But I have not experienced any patients who said that they were upset because our staff

165

contacted them or because of the medical treatment that they received.

It is my understanding that H.B. 1327 would make it illegal for our staff to contact patients about medical care unless the patient or the patient's relative first initiated the contact. Thus, if one of my patients tells us about someone who was hurt at work or in an accident, or who simply has a nagging problem that won't go away, under H.B. 1327 our staff cannot contact the person to offer a free consultation. Also, I could be in danger of violating H.B. 1327 even if the friend contacts the person on our behalf. This makes it extremely difficult to practice, because I can be found guilty of committing a third degree felony and lose my license, not only for what I do but for what my staff does, and even possibly for what the friendly neighbor does.

As another example of how H.B. 1327 frightens me and will have a dramatic effect on my practice, I was recently driving down the road and suddenly discovered an injured motorist. I stopped to render aid, as I believe I am ethically required to do as a licensed doctor of chiropractic. Because of the nature of the injuries, the injured motorist required emergency medical treatment and my involvement was limited to giving comfort and preventing other people from moving her until EMS arrived. What if her injuries were minor and I believed that my area of expertise could have helped her? Under H.B. 1327 it is my understanding that I could be guilty of a third degree felony for advising her of the need and opportunity for care, if any part of the communication included an intent on my part to obtain an economic benefit. My primary motive was certainly not to earn money; in fact, I didn't even leave this lady a business card partly out of fear that my efforts might be misconstrued. If I believed that she could benefit from chiropractic treatment, however, and if I had recommended that she visit my clinic, I cannot honestly say that I would have had no intention of being paid. Yet the money was not the motivating force causing me to render aid. Under these circumstances, I do not believe that I should have my license subject to revocation. My desire to help should not cause me to risk committing a third degree felony based on such subjective intangibles as whether I intended to receive an economic benefit when I communicated with her.

If chiropractors or their staff mislead or lie to patients, they should be prosecuted. But my experience suggests that there is more deceit coming from insurance adjusters trying to quickly dispose of cases, not offering to pay for medical care unless people first sign releases, than from any chiropractors. I provide only truthful, non-deceptive information, and I am unaware of even an allegation to the contrary. Because of H.B. 1327's broad prohibition on communicating with prospective patients, my right to communicate freely with prospective patients has been greatly diminished. More importantly, many people who could benefit from health care will go untreated because of the absence of

8

*Lef*

truthful information regarding available medical treatments.

13.     Plaintiff Alejandro G. Leal is similarly affected by enforcement of H.B. 1327. As set forth in Leal's affidavit, attached as Exhibit "D", Leal is in the business of Cosmetology.

> I hold a Texas Cosmetology Operator's License, issued in the Fall of 1995. I have been practicing Cosmetology in the Harlingen, Cameron County, Texas area working at Xclusive Hair Designs since early 1996.
>
> We do some advertising by newspaper and radio, but it is real expensive. Most of our business comes from word-of-mouth in referrals.
>
> Sometimes a client will know of a friend who put the wrong chemicals on their hair and the chemicals damage their hair, or cause the wrong color, or cause some other type of problem.  This client will oftentimes ask if I think I can help and I will usually say that I can.  It is possible that one of my staff will call the potential client, but it is more likely that the existing client will refer the friend to my office.  I will usually provide some type of free care for the existing client who refers the friend with the problem.
>
> It is my understanding that under H.B. 1327 this would be illegal.  Further, if I treat the potential client with the problem I would be committing a third degree felony.  Therefore, H.B. 1327 has a dramatic affect on my ability to communicate to these potential clients and my ability to work with existing clients to develop my business.
>
> Without referrals and word-of-mouth advertising, my business would be devastated.  I simply cannot afford the large scale advertising that the large corporations can.
>
> Also, I sometimes notice a person's hair or nails.  Particularly attractive nails and well cut hair or the opposite usually get my attention, since this is the business that I am in.  I will sometimes talk about a positive aspect of someone, even if I recognize that they have something wrong with their hair or nails, in order to move the conversation towards the problem and the fact that I could help them. I never do this in an offensive manner and I cannot imagine anyone who is successful in business who offends potential customers by criticizing their problem. It is not intended as a criticism, but as a method of communicating and working our

*167*

CVisPDF - www.fenrir.com

way toward a problem so that the client can see that I could provide a solution to the problem. This is simply how I get my business. I cannot understand why the Texas Legislature chose to make it a third degree felony for me to communicate with people who could use my services or my services would benefit those people.

I provide only truthful information, and since I have been in business no one has even accused me of providing information that is in any manner deceptive.

Because of H.B.1327's broad prohibition on communicating with prospective patients, my right to communicate freely with prospective patients has been greatly diminished. More importantly, many people who could benefit from health care will go untreated because of the absence of truthful information regarding available medical treatments.

14.     Interestingly, H.B. 1327 does not make a communication illegal if it is directed to the general population, including both individuals with absolutely no need for the information and individuals who do suffer from a particular injury, accident or medical problem or condition who need the information -- so long as the communication does not "arise" out of the need for the communication. But to the extent that the communication is initiated by or on behalf of the chiropractor and arises out of a need for the communication, the communication constitutes an offense under H.B. 1327.

15.     Again, H.B. 1327 wholly fails to distinguish between communications which are truthful, not misleading and not deceptive, from those communications that are untruthful, misleading or deceptive. This blanket prohibition places the Plaintiffs, its officers, employees and clients in jeopardy of criminal prosecution for engaging in truthful communication.

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

10

## AND A PRELIMINARY INJUNCTION AND MEMORANDUM

16.    Plaintiffs hereby move this Court, pursuant to Fed. R. Civ. P. 65, for a Temporary Restraining Order and for an Order fixing a date for a hearing on a Preliminary Injunction against the enforcement of House Bill 1327. Plaintiffs submit the following Memorandum and the attached Affidavits in support of their Motion.

### Applicable Standard For The Issuance Of Injunctive Relief

17.    In accordance with traditional standards for the issuance of a Preliminary Injunction as set forth in Fed. R. Civ. P. 65 and case law, Plaintiff must show:

(a)    Substantial likelihood that Plaintiffs will prevail on the merits;

(b)    A substantial threat that Plaintiffs will suffer irreparable harm if the injunction is not issued through the Defendant's enforcement of H.B. 1327;

©    The threatened injury to Plaintiffs outweighs the possible harm of the injunction to the Defendant; and

(d)    The issuance of a Temporary Restraining Order and a Preliminary Injunction will not be adverse to the public interest. *Canal Authority of Florida v. Callaway,* 489 F.2d 567 (5th Cir. 1974); *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir. 1972).

11

165

## Facts in Support of Motion for Temporary
## Restraining Order and for Preliminary Injunction

18.     For the purposes of the Motion for Temporary Restraining Order, which is the
Motion presently ripe for decision, Plaintiffs submit the Affidavits of Boyd, Bailey, Leal and
Cartwright, attached hereto as Exhibits "B," "C," , "D"and "E" respectively, and fully
incorporated herein.

19. Plaintiffs testify to facts showing (a), (b), (c) and (d) above. Plaintiffs show that
enforcement of H.B. 1327 will have a dramatic and negative impact on their livelihood by
prohibiting the sale and dissemination of truthful, non-deceptive information to people more
likely to need professional care than the population at large. Plaintiffs also show that the
public interest will not be disserved, but will instead be served, by the issue of a Temporary
Restraining Order pending a hearing on the Motion for a Preliminary Injunction.

20.     At the hearing on the Motion for a Preliminary Injunction, Plaintiffs will
submit proof not only in support of a facial attack upon the H.B. 1327, but will submit an
"as applied" attack as well. That is, Plaintiff will submit proof that the communications they
have sent and the communications they intend to send, both on their own account and on
behalf of their clients, are truthful, not deceptive and not misleading, and constitutionally
protected. Plaintiffs will further ask this Court to rule that insofar as the Statutes apply to
such communications, the Statutes violate the First Amendment as incorporated through the
Fourteenth Amendment, as well as the Equal Protection and Due Process provisions of the

12

Fourteenth Amendment, and Art. 1, §§ 3 and 8 of the Texas Constitution.

21.    The Plaintiffs are likely to prevail on the merits because of H.B. 1327's constitutional infirmities noted below.  Therefore, a temporary restraining order is warranted to protect the status quo and prevent irreparable harm.

### First Amendment
### Attack On H.B. 1327

22.    This Court should measure H.B. 1327's constitutionality under the heightened, mid-level scrutiny as set forth in *Central Hudson Gas & Elec. Corp v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) and subsequent decisions,  generally analyzed  as follows:

> Is the commercial speech truthful and does it concern lawful activity?  If the answer to both questions is yes, such commercial speech is protected by the First Amendment and any governmental regulation must pass the following three-part test:

> (i)    the governmental interest in regulating the commercial speech must be substantial;

> (ii)   the  regulation must directly advance the governmental interest asserted; and

> (iii)  the regulation must be no more extensive than necessary to serve that substantial governmental interest. (*Central Hudson*, 447 U.S. at 566; *Liquormart v. Rhode Island*, __ U.S. __; 116 S.Ct. 1495; 1996 U.S. LEXIS 3020 (1996)

23.    The United States Supreme Court has utilized a heightened review, focusing on the "special care" or "special concerns" that arise from blanket bans on a particular type of commercial speech. *Central Hudson*, 447 U.S. at 566, fn 9 & 10; *44 Liquormart*, 1996 U.S. LEXIS at 3031-32.

 Complete  speech  bans,  unlike  content-neutral  restrictions  on  the  time,  place,  or  manner  of expression  are  particularly  dangerous  because  they  all  but  foreclose  alternative  means  of disseminating certain information. *44 Liquormart*, 1996 U.S. LEXIS at 3032, 3036 (explaining that

/?/

any speech prohibition that does not directly advance consumer protection as compared to some other state interest must be reviewed with "special care" and rarely survive constitutional review).

24.     Since the proscribed speech targeted by H.B. 1327 is truthful and not misleading, the party seeking to uphold the restriction on commercial free speech carries the burden of proof justifying the restriction. *Edenfield v. Fane*, 507 U.S. 761, 113 S.Ct. 1792, 1800 (1993).  The State carries the further burden that the regulation will not only advance the State interest, "but also that it will do so 'to a material degree.'" *44 Liquormart*, 1996 U.S. LEXIS at 3028, citing *Edenfield*, 507 U.S. at 771.

25.     H.B. 1327 is not a time, place or manner prohibition; but a blanket ban on telephonic or in-person communications by all medical care professionals  to people more likely to need the medical care than the general population.  H.B. 1327 also does not merely require  disclosure of beneficial consumer information, but actually seeks to preclude communications by medical professionals to those most in need of the information.  A State may not constitutionally ban a particular communication on the theory that communicating to those it would most interest is somehow inherently objectionable. *Shapero v. Kentucky Bar Association*, 486 U.S. 466, 473-74 (1988).  H.B. 1327's proscriptions against targeted telephonic and in-person solicitation is squarely aimed at the efficacy of Professional's solicitation and communication with prospective paitients/clients.    If the State can force Professionals to utilize only a shotgun approach, marketing to the general public, as opposed to those most in need of the communication, the State can effectively prevent the content of the undesirable communications through rendering the alternatives inefficient and ineffective. See *44 Liquormart*, 1996 U.S. LEXIS at 3026-32,n.8 (explaining that the Court should treat a restriction as a complete ban if it did not "leave open 'satisfactory' alternative

/72

channels of communication," citing *Linmark Associates v. Willingbore*, 431 U.S. 85, 92-94 (1977)).

26.     Recognizing the inherent difficulties in applying the Central Hudson test, Justice Thomas has suggested that all attempts to dissuade legal choices by keeping citizens ignorant are impermissible. *44 Liquormart*, 1996 U.S. LEXIS at 3072 (Thomas, J, concurring)

27.     The Supreme Court in *Edenfield v. Fane,* 507 U.S. 761; 113 S. Ct. 1792 (1993) held that unlike rational review basis, when examining Florida's proscription against personal solicitation by CPA'S,

> [W]e must ask whether the state's interests in proscribing it are substantial; whether the challenged regulation advances these interests in a direct and material way; and whether the extent of the restriction on protected speech is in reasonable proportion to the interest served. *Id.* at 1798.

*28.     Edenfield* also honored the underlying proposition that "[s]olicitation is a recognized form of speech protected by the First Amendment." *Id.* at 1797.  Moreover, *Edenfield* recognized that not only does the seller have the right to solicit business but that receipt of such information by potential buyers provides significant societal benefits.  *Id.* at 1798.  The First Amendment is designed to safeguard broad access to complete and accurate commercial information which is necessary to a free market economy. *Id.* at 1798.

29.     Like Florida's CPA's, H.B. 1327 seeks to prohibit Texas Medical Care Professionals from disseminating truthful information to those most likely to respond to the information.  As such, it violates Plaintiffs' First Amendment right to free speech and unconstitutionally denies the prospective clients their concomitant right to receive complete and accurate commercial information which is indispensable to making informed decisions within the free market economy. See *44 Liquormart*, 1996 U.S. LEXIS at 3024. Limiting  information as to various medical treatments

/73

available and their corresponding prices is likely to harm, not protect, the general public.

**Void for Vagueness;**
**Absence of Fair Notice;**
**Excessive Discretion in Hands of Defendants**

30.     A statute is void for vagueness in violation of a person's Due Process rights secured by the Fourteenth Amendment if "it fails to give a person of ordinary intelligence fair notice that his forbidden conduct is prohibited by the Statute." *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972).  There is a well recognized body of case law "insisting that the law give fair notice of the offending conduct." *Id.* at 162 (citations omitted). Case law has embraced the void for vagueness standard and required that a statute "must be sufficiently definite in that its terms and provisions may be known and understood; otherwise, it is vague and unenforceable." *Lucario v. Texas,* 677 S.W. 2d 693, 696-97 (Tex. App.--Houston [lst Dist.] 1984, no writ), citing *Parr v. State,* 575 S.W. 2d 522 (Tex. Crim. App. 1979).

31.     Because of the vagaries involved, no prudent person holding a license regulatory agency or other person working with or on behalf of such a person  would risk committing an offense of H.B. 1327 and suffering the attendant third degree felony penalties.   Thus, Plaintiffs' livelihood in procuring and disseminating truthful information to their clients and to injured individuals on behalf of their clients will effectively cease.

32.     This Court is asked to take notice of the fact that H.B. 1327  does not provide the opportunity for Plaintiffs and or their clients to test the interpretation of H.B. 1327 by application for a permit or similar device;  instead, Plaintiffs and their clients must either cease business or risk an interpretation that such conduct creates a felony offense.  In such a case, the Statute proscribing

16

*124*

such conduct must be clear and provide fair notice of the offensive conduct. *Papachristou,* 405 U.S. at 162.

33.     A Statute's vagueness necessarily raises the issue of the discretion it places in the hands of those called upon to enforce such a Statute.  Absence of standards and clear statutory language encourages an arbitrary and discriminatory enforcement of the law. *Papachristou,* 405 U.S. at 170.  In a case somewhat similar to the instant case, the Supreme Court held that "a law permitting communication in a certain manner for some but not for others raises the danger of content and viewpoint censorship, which is at its zenith when the determination of who may speak and who may not is left to an official's unbridled discretion." *City of Lakewood v. Plain Dealer Publishing,* 486 U.S. 750, 7-51 (1988). Thus, *Lakewood* suggests that H.B. 1327 places too much discretion in the hands of the local law enforcement agencies and is unconstitutionally vague.  Clear Supreme Court precedent has invalidated statutes that are vague and allow unfettered discretion.  H.B. 1327 violates the First Amendment and Due Process and Equal Protection provisions of the Fourteenth Amendment.

### Equal Protection

34.     As noted above, a statute's vagueness can necessarily leave too much discretion in the hands of those called upon to enforce such statutes.  In the instant case, Plaintiffs face the likelihood that H.B.1327 will be enforced in an unconstitutionally discriminatory manner, targeted against those medical care professionals whose message is disapproved of by law enforcement agencies or, more likely, other competing medical care professionals.

34.     By contrast, professional advertisements through "public media" are specifically excluded from the proscriptions of the  H.B. 1327.   What characteristics qualify a communicator

17

*/75*

as "public media" versus "non-public media?" The public media exception is unnecessary and superfluous unless it is intended to allow public media to communicate with prospective clients/patients via telephone or in-person; whereas the non-public media is prohibited from making the same telephonic or in-person communication. As Justice Marshall stated in delivering the opinion for the Court in *Arkansas Writers Project v. Ragland,* 481 U.S. 221 (1987), First Amendment claims are obviously intertwined with Equal Protection rights secured by the Fourteenth Amendment. Because H.B. 1327 excludes the public media from its proscriptions, but by implication makes the same communication made by the non-public media punishable as a third degree felony, H.B. 1327 violates Plaintiffs' constitutional right to equal protection under the law.

### REQUEST FOR RELIEF, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, AND DECLARATORY JUDGMENT

36.     Plaintiffs are entitled under and by virtue of the First and Fourteenth Amendments to the Constitution of the United States, Article 1, Sections 3 & 8 of the Texas Constitution, 28 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure to a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction enjoining Defendants from enforcing House Bill 1327, which amended the Texas Penal Code §§38.01 & 38.12 (Barratry Statute).

37.     Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a judgment of this Court declaring H.B. 1327 to be in violation of Plaintiffs' and Plaintiffs' clients' rights under the First and

Fourteenth Amendments to the Constitution of the United States and Article **I, §§** 3 & 8 of the Texas Constitution.

38.    In consideration of the foregoing, Plaintiffs ask that the Court immediately set a hearing and or conference on the Motion for Temporary Restraining Order; and that after notice and an evidentiary hearing, that the Court enter a Preliminary Injunction.

39.    Plaintiffs ask that upon the trial hereof the Preliminary Injunction prayed for above be made permanent; that the Court declare H.B. 1327 to be unconstitutional; that Plaintiffs be awarded reasonable attorney's fees pursuant to 42 U.S.C. 1983 and 1988, costs and such other and further relief as it may show itself justly entitled.

Respectfully submitted,

By: _____

MARTYN B. HILL
State Bar No. 09647460
KENT J. PAGEL
State Bar No. 15410900
3150 Two Houston Center
909 Fannin
Houston, Texas 77010
Tel:   (713)  951-0160
Fax:  (713)  951-0662

ATTORNEYS IN CHARGE FOR PLAINTIFFS,
Mark Baiely, D.C., Todd Boyd ,D.C., Curtis Cook
, D.C., d/b/a/ Xclusive Hair Designs and Rosa Cartright
D/b/a/ Rita's Beauty Salon

19

*177*

OF COUNSEL:

PAGEL, DAVIS & HILL, P.C.
3150 Two Houston Center
909 Fannin
Houston, Texas 77010
Tel:    (713) 951-1060
Fax:    (713) 951-0662


COMPLAINT.2.vcl\TEXAS

*178*

## VERIFICATION

STATE OF TEXAS       §
                                §

COUNTY OF _CAmeroN_    §

        BEFORE ME, the undersigned Notary public, on this day personally appeared Mark

Bailey, D.C. who, being by me duly sworn on his oath deposed and said that he is a Plaintiff in

the above entitled cause; that he has read the above and foregoing Plaintiffs' Verified Original

Complaint for Declaratory Judgment, Motion for Temporary Restraining Order and Motion for

Preliminary Injunction and Memorandum; and that the facts contained therein are within his

knowledge and are true and correct.

Mark Bailey, D. C.

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this the 3rd
day of September, 1997.

VELBA GONZALES
MY COMMISSION EXPIRES
August 28, 2001

Notary Public in and for the State of Texas

175