United States District Court
Southern District of Texas
FILED

SEP 23 1997

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

| | | |
|---|---|---|
| MARK BAILEY, D. C., § | | |
| TODD BOYD, D. C., CURTIS COOK, D.C, § | | |
| ALEJANDRO LEAL, ROSA CARTRIGHT § | | |
| D/B/A RITA'S HAIR DESIGN § | | |
| d/b/a EXCLUSIVE HAIR DESIGNS § | | |
| Plaintiffs, § | | |
| § | | |
| VS. § | CIVIL ACTION NO. | |
| § | | |
| DAN MORALES, as Attorney General § | | |
| of the State of Texas § | B-97-206 | |
| Defendant § | | |
| § | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY INJUNCTION
AND COMPLAINT FOR DECLARATORY JUDGMENT**

Mark Bailey, D. C. ("Bailey"), Todd Boyd, D.C. ("Boyd"), Curtis Cook, D.C. ("Cook"), and Alejandro Leal, d/b/a Xclusive Hair Designs, and Rosa Cartright, d/b/a Rita's Beauty Salon, Plaintiffs, file this Memorandum in response to this Court's request at the hearing on September 12, 1997 for supplemental legal authority in support of Plaintiff's requested relief, and Plaintiffs respectfully incorporates Plaintiffs' Original Complaint into this Memorandum and would further represent:

**A. FEDERAL DISTRICT COURT'S
JURISDICTION OVER CASES AND CONTROVERSIES/RIPENESS**

1.   There is no bright line test for what does and what does not present itself as a case or controversy under Article III of the United States Constitution. *Flast v. Cohen*, 392 U.S. 83,, 88 S. Ct. 1942, 20 L.Ed.2d 947 (1968) (noting that the two words, "cases" and "controversies," "have an

iceberg quality, containing beneath their surface simplicity, submerged complexities which go to the very heart of our constitutional form of government." Id. ) The case or controversy requirement implicates two complementary but somewhat different limitations: (i) requiring presentation of the dispute in an adversary context in a form historically viewed as capable of resolution through the judicial process; and (ii) defining the role assigned to the judiciary in a tripartite allocation of power. Id. As part of the traditional "case or controversy" analysis, courts have also employed the terms "standing," "justiciability, and ripeness" to ensure that the parties have and continue to have a personal stake in the outcome of the lawsuit, capable of adjudication by the court. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed. 2d 400 (1990); *Flast v. Cohen*, 392 U. S. 83 (the gist of "standing" requires such a personal stake in the outcome of the controversy as to assure that concrete adverseness upon which a court so largely depends for illumination of a difficult constitutional question).

2. By contrast, courts are to avoid abstract questions and advisory opinions of what the law would be upon a hypothetical state of facts. *Lewis*, 494 U.S. 472. The difference between an abstract question and an actual "case or controversy," however, is one of degree and is not discernible by any precise test. . *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The basic inquiry is whether the conflicting contentions of the parties present a real and actual controversy between parties having adverse legal interests, with a definite and concrete dispute, and not one which is merely hypothetical or abstract. *Babbitt*, 442 U.S. at 297.

3. Although Plaintiffs in the present case do not need such an extreme reach in meeting the "case or controversy" requirement, Plaintiffs would point out that challenges involving First Amendment rights have been consistently found by the Supreme Court to present a justiciable "case

or controversy." *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed. 2d 228 (1968) (where the U. S. Supreme Court struck an anti-Darwinian statute which had languished on the books for nearly 40 years without a single attempt by the State to enforce it, and where the teacher who initiated the case had since retired from teaching, "thereby escaping the dangers she had imagined might befall her under this lifeless Arkansas Act" Id. at 109-10, Black, J., concurring but pointing out the stretch to find an actual case or controversy).

4. The Supreme Court has often recognized that a defendant's standing to challenge a statute on First Amendment grounds as facially over broad does not depend upon whether his own activity is shown to be constitutionally privileged. The Court consistently has permitted attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Bigelow v. Virginia*, 421 U.S. 809, 815-16 (1975), citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965).

5. So long as the Plaintiff has demonstrated an actual case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Schaumburg*, 444 U.S. 620, 634 (1980), citing *Grayned v. City of Rockford*, 408 U.S. 104, 114-121. In the context of the First Amendment, courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that the protected speech or associative activities may be inhibited by the overly broad reach of the statute. *Schaumburg*, 444 U.S. 620, 634 (1980). *Doe V. Bolton*, 410 U.S. 179, 35 L Ed. 2d 201, 93 S.Ct. 739 (1973) (despite doctors not having been threatened with prosecution under a Georgia law restricting abortions, physician plaintiffs asserted a sufficiently direct

threat of personal detriment to challenge the constitutionality of the statute without being required to await and undergo a criminal prosecution as the sole means of seeking relief.

6. Most importantly, in light of this Court's request for legal authority on the absence of any pending state prosecution against Plaintiffs, such prosecution is <u>not necessary</u> to Plaintiffs' right to pursue this Complaint for injunctive and declaratory relief. "[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 475 (1974). See *Spencer v. Honorable Justices of Supreme Court of Pennsylvania*, 579 F.Supp. 880, 883-84 (E.D. Pa. 1984), aff'd, 760 F.2d 261 (3d Cir. 1985) (finding Pennsylvania lawyer had sufficient personal stake in outcome of litigation to confer standing to challenge constitutionality of state bar rules without having to undergo disciplinary action); *Doe v. Bolton, Attorney General of Georgia*, 410 U..S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (holding that physician plaintiffs presented justiciable controversy and had standing despite the fact that none of them had been prosecuted or threatened with prosecution, for violation of the State's abortion statutes.); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 60 L.Ed.2d 895, 99 S.Ct. 2301 (1979) (holding that a plaintiff need not chance arrest and prosecution prior to filing suit, "when the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. . . ."

7. Thus, under the allegations and supporting affidavits in Plaintiffs' Original Complaint Plaintiffs surely meet the "case or controversy" requirement, for their past and intended future conduct has been criminalized by HB 1327. Clear precedent demands no more and affords Plaintiffs

4

the opportunity to seek injunctive and declaratory relief in this Federal District Court.

## B. DECLARATORY JUDGMENT RELIEF

8. In the present case, Plaintiffs are entitled to Declaratory Judgment relief because the Complaint and the affidavits demonstrate an actual controversy in that HB 1327 criminalizes conduct that the Plaintiffs engaged in prior to the effective date of HB 1327 and which they have announced an intention to continue engaging in after September 1, 1997 -- But for HB 1327.

9. An "actual controversy" within the meaning of the Federal Declaratory Judgment Act (28 USC §2201) means a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Golden v. Swickler*, 394 U.S. 103, 108-09, 89 S.Ct. 956, 22 L.Ed. 2d 113 (1969), citing *Maryland Casualty Co. v. Pacific Coal & Oil*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); see also Steffel, 415 U.S. 452, 475 (1974); *Hardwick v. Allen*, 517 F.2d 295 (5th Cir. 1975).

10. A Declaratory Judgment is a separate inquiry from injunctive relief. *Steffel v. Thompson*, 415 U.S. 452, 475 (1974) Regardless of whether Plaintiffs attack the constitutionality of a criminal statute "facially" or "as applied," a pending state prosecution is not required in order to seek federal declaratory relief. *Steffel v. Thompson*, 415 U.S. 452, 475 (1974);*Golden v. Zwickler*, 394 U.S. 103, 108, 22 L. Ed. 2d 113, 89 S.Ct. 956 (1969)(only requiring that the facts demonstrate "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.")

11. Therefore, the same actual controversy between Plaintiffs and enforcement of HB 1327 which afford Plaintiffs the opportunity to seek redress in this Federal District Court as set forth

5

/47

in Section A above, also demonstrates Plaintiffs' right to a Declaratory Judgment that HB 1327 is unconstitutional.

### C. PRELIMINARY INJUNCTION

12. Plaintiffs have also moved this Court, pursuant to Fed. R. Civ. P. 65, for injunctive relief and to fix a date for a hearing on a Preliminary Injunction against the enforcement of House Bill 1327. Plaintiffs have submitted affidavits in support of their Motion (regarding the Temporary Restraining Order) and are prepared to offer the same and additional testimony in support of their Motion for a Preliminary Injunction.

13. In accordance with traditional standards for the issuance of a Preliminary Injunction as set forth in Fed. R. Civ. P. 65 and case law, Plaintiff must show:

(a) Substantial likelihood that Plaintiffs will prevail on the merits;

(b) A substantial threat that Plaintiffs will suffer irreparable harm if the injunction is not issued through the Defendant's enforcement of H.B. 1327;

(c) The threatened injury to Plaintiffs outweighs the possible harm of the injunction to the Defendant; and

(d) The issuance of a Temporary Restraining Order and a Preliminary Injunction will not be adverse to the public interest. *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974); *Allison v. Froehlke*, 470 F.2d 1123, 1126 (5th Cir. 1972).

14. The standards for seeking injunctive relief against the enforcement of an allegedly unconstitutional statute which criminalizes truthful speech look to the above referenced factors with a focus on preserving the status quo and balancing the harms. Plaintiffs supporting affidavits have demonstrated, and Plaintiffs testimony would further demonstrate, that Plaintiffs' income will suffer

6

148

from enforcement of the act and even something so simple as giving away a free comb or offering a free chiropractic examination could violate HB 1327, constitute a third degree felony and brand Plaintiffs with a crime of moral turpitude for which their respective licenses are placed in jeopardy.

15. By comparison, the State has not and most likely cannot demonstrate any significant harm from enjoining enforcement of HB 1327. If the State takes the position that they do not intend to actively enforce HB 1327, no harm will come to the State from enjoining enforcement and this will actually simplify the costs to various enforcement agencies. If the State admits that it fully intends to enforce every aspect of HB 1327, the harm to Plaintiffs and those similarly situated is immense. Also, as set forth in Plaintiffs' Original Complaint, the harm to prospective patients and clients from not receiving truthful information, not receiving free hair and nail offers, and not receiving free initial chiropractic examinations is immense. This substantial harm to Plaintiffs' and their putative clients and those similarly situated must be weighed against any prospective harm that the State might demonstrate if HB 1327 is not enforced. Again, balancing the respective harms demonstrates that enjoining enforcement of HB 1327 would be in the public interest.

16. It is particularly important to note that Plaintiffs have attacked HB 1327 as criminalizing Plaintiffs' desire and intention to make communications that are truthful, not deceptive and not misleading, and constitutionally protected. Plaintiffs will further ask this Court to rule that insofar as the Statutes apply to such communications, the Statutes violate the First Amendment as incorporated through the Fourteenth Amendment, as well as the Equal Protection and Due Process provisions of the Fourteenth Amendment, and Art. 1, §§ 3 and 8 of the Texas Constitution.

17. Because of HB 1327's criminalization of truthful communications, the burden shifts to the state to demonstrate that the restriction meets the constitutional requirements as set forth in

*Central Hudson Gas & Elec. Corp v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) and subsequent decisions, demanding that truthful communications concerning lawful activities may be restricted <u>only if</u> the State meets it burden of proof demonstrating that: (i) the governmental interest in regulating the commercial speech must be substantial; (ii) the regulation must directly advance the governmental interest asserted; and (iii) the regulation must be no more extensive than necessary to serve that substantial governmental interest. (*Central Hudson*, 447 U.S. at 566; *Liquormart v. Rhode Island*, __ U.S. __; 116 S.Ct. 1495; 1996 U.S. LEXIS 3020 (1996)

19. Thus, this Court should consider Plaintiffs' Motion for a Preliminary Injunction and the "substantial likelihood of prevailing on the merits factor" in view of the State's heavy burden under the *Central Hudson* test. Moreover, HB 1327 does not merely require disclaimers or serve as a time, place or manner restriction; instead, HB 1327 absolutely prohibits a complete range of communications and makes any violation a third degree felony without any means of deciphering the scope of HB 1327 without risking criminal sanctions. Under these circumstances, the United States Supreme Court has utilized a heightened review, focusing on the "special care" or "special concerns" that arise from blanket bans on a particular type of commercial speech. *Central Hudson*, 447 U.S. at 566, fn 9 & 10; *44 Liquormart*, 1996 U.S. LEXIS at 3031-32. Complete speech bans, unlike content-neutral restrictions on the time, place, or manner of expression are particularly dangerous because they all but foreclose alternative means of disseminating certain information. *44 Liquormart*, 1996 U.S. LEXIS at 3032, 3036 (explaining that any speech prohibition that does not directly advance consumer protection as compared to some other state interest must be reviewed with "special care" and rarely survive constitutional review).

19. Plaintiffs cannot fully address the State's evidence meeting or failing to meet the

*Central Hudson* test until and unless the State presents such evidence. The test is fairly well defined by precedent, and Plaintiffs will address any such evidence meeting the test or failing to meet the test after the State provides at least a glimpse of such evidence. Plaintiffs request that the Court consider the State's heavy burden as it weighs the relative harms and considers Plaintiffs likelihood of prevailing on the merits as one of the requirements for entering injunctive relief.

20. In summary, Plaintiffs have demonstrated an actual "case or controversy" in that Plaintiffs' past and intended future conduct has been proscribed and criminalized by HB 1327. Plaintiffs have suspended such truthful communications for fear of violating HB 1327. This restriction on truthful speech violates Plaintiffs' constitutional rights and warrants action by this Court.

Respectfully submitted,

By: _____
MARTYN B. HILL
State Bar No. 09647460
KENT J. PAGEL
State Bar No. 15410900
3150 Two Houston Center
909 Fannin
Houston, Texas 77010
Tel: (713) 951-0160
Fax: (713) 951-0662

ATTORNEYS IN CHARGE FOR PLAINTIFFS, Mark Bailey, D.C., Todd Boyd D.C., Curtis Cook, D.C., d/b/a/ Xclusive Hair Designs and Rosa Cartright D/b/a/ Rita's Beauty Salon

*Central Hudson* test until and unless the State presents such evidence. The test is fairly well defined by precedent, and Plaintiffs will address any such evidence meeting the test or failing to meet the test after the State provides at least a glimpse of such evidence. Plaintiffs request that the Court consider the State's heavy burden as it weighs the relative harms and considers Plaintiffs likelihood of prevailing on the merits as one of the requirements for entering injunctive relief.

20. In summary, Plaintiffs have demonstrated an actual "case or controversy" in that Plaintiffs' past and intended future conduct has been proscribed and criminalized by HB 1327. Plaintiffs have suspended such truthful communications for fear of violating HB 1327. This restriction on truthful speech violates Plaintiffs' constitutional rights and warrants action by this Court.

Respectfully submitted,

By: _____
MARTYN B. HILL
State Bar No. 09647460
KENT J. PAGEL
State Bar No. 15410900
3150 Two Houston Center
909 Fannin
Houston, Texas 77010
Tel:   (713) 951-0160
Fax:   (713) 951-0662

ATTORNEYS IN CHARGE FOR PLAINTIFFS, Mark Bailey, D.C., Todd Boyd D.C., Curtis Cook, D.C., d/b/a/ Xclusive Hair Designs and Rosa Cartright D/b/a/ Rita's Beauty Salon

...

OF COUNSEL:

PAGEL, DAVIS & HILL, P.C.
3150 Two Houston Center
909 Fannin
Houston, Texas 77010
Tel:   (713) 951-1060
Fax:   (713) 951-0662

## Certificate of Service

A copy of this Memorandum has been served by Federal Express and by Regular First Class Mail on Defendant by serving James B. Pinson, Office of the Attorney General, Price Daniel Sr. Bldg., 209 W. 14th Colorado, Austin, Texas 78711.

_____   September 22, 1997
Martyn B. Hill

CHIR919.MEM.BRODSK

153