24

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED
SEP 16 1999
CHARLES R. FULBRUGE III
CLERK

No. 98-41071

United States District Court
Southern District of Texas
FILED
OCT 18 1999
Michael N. Milby
Clerk of Court

MARK BAILEY, et al.,

        Plaintiffs

MARK BAILEY, DC; TODD BOYD, DC; CURTIS COOK, DC

        Plaintiffs-Appellants

-vs-

DAN MORALES, Attorney General, State of Texas

        Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, and WIENER, Circuit Judges, and LITTLE, Chief District Judge.[*]

LITTLE, District Judge:

    Mark Bailey, D.C. ("Bailey") appeals the district court's ruling upholding the constitutionality of Texas House Bill

---

[*] Chief Judge F.A. Little, Jr. of the Western District of Louisiana, sitting by designation.

1327 ("H.B. 1327").¹  We REVERSE the district court's ruling with respect to the first amendment and declare the statute unconstitutional as applied to chiropractors.

I.

This case arises out of the Texas Legislature's attempt to regulate the "cottage industry" of alleged ambulance-chasing chiropractors and others that has emerged in Texas. Touting the state interests of consumer privacy, protection and the need to preserve the reputations of state-licensed professionals, the Seventy-Fifth Texas Legislature passed H.B. 1327, which prohibits chiropractors and other professionals from soliciting employment, in person or over the telephone, from individuals who have a special need for chiropractic services arising out of a particular occurrence (e.g., an accident) or a pre-existing condition (e.g., having arthritis).²  The act exempts from its prohibition

---

¹ In so doing, the district court found no violation of the first or fourteenth amendments.

² In its pertinent parts, H.B. 1327 states: "A person commits an offense if, with intent to obtain an economic benefit the person . . . (2) solicits employment, either in person or by telephone, for himself or for another[.]" 1997 Tex. Sess. Law Serv. 750 (H.B. 1327) (amending Tex. Penal Code Ann. § 38.12(1)(2)) (Vernon's, WESTLAW through TX LEGIS 750 (1997)).
Under the act, "soliciting employment" means:

to communicate in person or by telephone with a prospective client or a member of the prospective client's family concerning professional employment within the scope of a professional's license, registration, or certification arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing problem of the prospective client within the scope of the professional's license, registration , or certification, for the purpose of providing professional

2

communications initiated by the injured or ill person or a member of his family, communications by a chiropractor (or other professional) who has an existing professional-client relationship with the injured or ill person, and communications by attorneys for qualified nonprofit organizations for the purpose of providing legal aid or education to the organization's members. The act also prohibits solicitation via "runners" or telemarketing and by distributing promotional gifts and items.[3] Finally, the act proscribes the acceptance of employment obtained by way of the prohibited solicitation.[4]

---

services to the prospective client, when neither the person receiving the communication nor anyone acting on that person's behalf has requested the communication. The term does not include a communication initiated by a family member of the person receiving a communication, a communication by a professional, who has a prior or existing professional-client relationship with the person receiving the communication, or communication by an attorney for a qualified nonprofit organization with the organization's members for the purpose of educating the organization's members to understand the law, to recognize legal problems, to make intelligent selection of legal counsel, or to use available legal services. The term does not include an advertisement by a professional through public media.

Id. § 1 (amending Tex. Penal Code Ann. § 38.01(11)).
    Finally, H.B. 1327 defines "professional" broadly as "an attorney, chiropractor, physician, surgeon, private investigator, or any other person licensed, certified, or registered by a state agency that regulates a health care profession." Id. (amending Tex. Penal Code Ann. § 28.01(12)).

[3] A person commits an offense if, with intent to obtain an economic benefit the person . . . (3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client; (4) pays or gives or offers to pay or give a person money or anything of value to solicit employment.

Id. § 2 (amending Tex. Penal Code Ann. §§ 38.12(a)(3),(4); see also id. (amending Tex. Penal Code Ann. §§ 38.12(b)(1),(2)) ("A person commits an offense if the person: (1) is . . . [a] chiropractor . . . and; (2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a).").

[4] "A person commits an offense if the person . . . (3) is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Subsection (a)." Id. (amending Tex. Penal Code Ann. § 38.12(b)(3)).

Plaintiffs Mark Bailey, D.C., Todd Boyd, D.C. and Curtis Cook, D.C. are chiropractors licensed and doing business in the state of Texas. Plaintiffs testified that, prior to the passage of H.B. 1327, they engaged in the following activities: (1) visiting senior citizen centers to speak to the elderly about the benefits of chiropractic care for the alleviation of arthritis pain; (2) contacting employers to ask them to refer injured workers for chiropractic care; (3) employing telemarketers to call victims of accidents (whose names are obtained from accident reports and work-related injury reports) to inform them of the benefits of chiropractic care; and (4) informing accident victims at the scene of an accident that the chiropractor has witnessed about the benefits of chiropractic care. The plaintiffs wish to continue these activities, but they fear that H.B. 1327 outlaws their intended acts.

Plaintiffs filed suit on 4 September 1997, praying for injunctive and declaratory relief on the grounds that H.B. 1327 violated their first and fourteenth amendment rights. Without ever holding an evidentiary hearing or requesting the submission of any evidence from the State of Texas ("the State"), the district court upheld the constitutionality of

4

H.B. 1327. Agreeing with the suggestion of the State, the district court held that visits to senior citizen centers and requests for referrals from employers would not violate H.B. 1327, so long as neither the senior citizen centers nor the employers received compensation from the chiropractors.

II.

Recognizing that first amendment problems present intertwined questions of law and fact, Fifth Circuit precedent prescribes de novo review of the district court order. See Moore v. Morales, 63 F.3d 358, 361 (5th Cir. 1995); Lindsay v. City of San Antonio, 821 F.2d 1103, 1107-08 (5th Cir. 1987); Dunagin v. City of Oxford, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (plurality opinion, Reavley, J.), cited with approval in Lockhart v. McCree, 476 U.S. 162, 170 n.3 (1986).

III.

Barratry involves stirring up or exciting litigation, some of which may be frivolous. At common law, a cause of action could not lie without three such instances. See, e.g. 9 FL Jur. 2d § 4 (1997); 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 1131, p. 1310. Statutes, however, may make individual acts of solicitation an offense of barratry. See

5

Tex. Penal Code Ann. art. 290 (1901) (repealed 1917); 9 FL Jur. 2d § 4; <u>see also</u> Susan Lorde Martin, <u>Syndicated Lawsuits: Illegal Champerty or New Business Opportunity?</u>, 30 Am. Bus. L.J. 485, 488-89 (1992).

The offense of barratry has an ancient lineage. In some form, the doctrine of barratry existed in Greek and Roman times, as well as in the Middle Ages in England. <u>See</u> Martin, <u>supra</u> at 487. Moreover, the legal profession's resistance to solicitation derives from the Magna Carta-era traditions of the English system of legal education. Beginning in the thirteenth century, the Inns of Court trained wealthy young men, who, needing no income, "viewed law practice as a public service instead of a trade." Katherine A. Laroe, Comment, <u>Much Ado About Barratry: State Regulation of Attorneys' Targeted Direct-Mail Solicitation</u>, 25 St. Mary's L.J. 1513, 1519-20 (1994). This view even gave rise to an eighteenth century law forbidding barristers from accepting fees, <u>id.</u> at 1520, much less soliciting them.

The State of Texas also has a long history with laws against barratry: it enacted its first criminal barratry statute in 1876. <u>Id.</u> at 1524. The barratry law has undergone periodic updates, of which H.B. 1327 is the latest. And in

6

the years following 1876, the United States Supreme Court explicitly acknowledged that the first amendment protects commercial speech. Since solicitation of business by chiropractors (even barratrous solicitations) is commercial speech, this court must measure the prohibition imposed by H.B. 1327 against the proscriptions of the first amendment.

Courts scrutinize commercial speech under the intermediate standard set forth in <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S. 557 (1980). This standard grants states free rein to regulate false, deceptive or misleading speech. <u>See id.</u> at 563-64. If the state wishes to regulate truthful and non-deceptive speech that merely proposes a commercial transaction, however, the state bears the burden of proving the following: (1) the state has a substantial interest, (2) the regulation directly and materially advances, and (3) the regulation is "narrowly drawn." <u>See id.</u> at 564-65.

The State has asserted three interests in this case: (1) forbidding solicitation where the sellers are likely to engage in, and the prospective buyers are vulnerable to, undue influence, intimidation, overreaching, or other vexatious conduct; (2) protecting the privacy and tranquility of injured

7

people; and (3) upholding the reputations and public images of the professionals licensed by the state. We accept this showing as one that satisfies the Central Hudson standard, since the Supreme Court has recognized each of these interests as being substantial. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 624-25 (1995) (maintaining ethical standards in state-licensed professions, privacy); Edenfield v. Fane, 507 U.S. 761, 770 (1993) (preventing fraud, maintaining ethical standards, privacy); Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 460 (1978) (maintaining ethical standards, preventing vexatious conduct).

Despite its strong interests, however, the State has not satisfied its burden of showing that H.B. 1327 materially and directly advances them. The Supreme Court has established that "mere speculation or conjecture" will not satisfy the burden; "rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield, 507 U.S. at 770-71. This standard is by no means insurmountable: the Supreme Court permits states to justify speech regulations by "reference to studies and anecdotes pertaining to different

8

locales altogether, or even . . . based solely on history, consensus, and 'simple common sense.'" <u>Went For It</u>, 515 U.S. at 628 (citations omitted). And yet, in <u>Edenfield</u>, the Supreme Court held that the state of Florida had not carried its burden when "[i]t present[ed] no studies[,] . . .[t]he record [did] not disclose any anecdotal evidence[,] . . . [and t]he only suggestion that a ban on solicitation might help prevent fraud and overreaching . . . [was an] affidavit . . . which contain[ed] nothing more than a series of conclusory statements[.]" 507 U.S. 771.

Here, the State concedes that it relies on "common sense," not data or empirical evidence, to demonstrate that H.B. 1327 directly and materially advances its interests. The only other way it attempts to carry its burden is by citation in its brief, as authority for its position, to the statements of two House members made during the 19 March 1997 public hearing about the bill. But these statements (which constitute two conclusory opinions and one anecdote) are not even part of the record, nor have they been introduced into evidence. Therefore, the success of the State's effort to carry its burden on this prong depends on the plausibility of the State's insistence that in-person and telephonic

9

solicitation of injured or ill people by chiropractors is "inherently conducive to overreaching and other forms of misconduct." Ohralik, 436 U.S. at 464. While speaking to seniors at senior citizen centers and contacting employers about injured workers[5] are activities that do not seem inherently conducive to overreaching, nor likely to result in provoking public ire toward chiropractors, "accident" telemarketing and dispensing advice at accident scenes clearly are undertakings imbued with potential for abuse. On balance, however, such a broad ban lacking a time limit does not directly and materially advance the State's admittedly important interests because it sweeps too many extraneous activities within its purview.

Similarly, the State has not met its burden to show narrow tailoring. On this third prong, all the Supreme Court requires is "'a "fit" between the legislature's ends and the means chosen to accomplish those ends,' a fit that is not

---

[5] Though the district court held that H.B. 1327 would not proscribe these efforts, the plain language of the statute clearly embraces speaking to seniors at a senior citizen center within its scope, and nothing within the statute suggests the existence of an exception on the basis of whether the senior citizen center receives a fee from the chiropractor because the senior citizen center would not be soliciting for the chiropractor.

Whether asking employers to refer injured workers falls within the statute is less clear. If the chiropractor pays the employer, then the conduct clearly violates § 38.12(a)(4). If the chiropractor does not pay the employer, however, then the chiropractor may not be "soliciting," since the chiropractor is not speaking to the prospective client or a member of his family (unless "client" is construed to include an employer who refers injured workers). The district court did not ratiocinate this issue at all; it merely stated, summarily, that it agreed with the State that speaking to employers would not offend H.B. 1327 so long as the chiropractor did not pay the employer.

10

necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served'[.]" Went For It, 515 U.S. at 632 (quoting Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)). "[T]he 'least restrictive means' test has no role in the commercial speech context." Id.

The State's argument is merely a bald assertion that H.B. 1327 is a prophylactic rule and reasonably proportional to the substantial state interests it serves. Yet two instances belie the State's claim. First, the plain language of H.B. 1327 proscribes such activities as speaking to seniors at a senior citizen center about the benefits of chiropractic treatment. Perhaps realizing that such breadth was constitutionally unacceptable, the state conceded to the district court that such conduct is not offensive, and the district court held that the statute does not apply to that activity. Essentially, the district court "cherry picked" its way through the statute: it judicially created an exception--unbidden by the language of the statute--to skirt the

11

constitutional infirmity.[6] This plainly indicates that the statute is not reasonably tailored.

Second, the part of H.B. 1327 that amends Texas Penal Code § 38.12(a)(3) is overly broad as it makes no reference to solicitation when it criminalizes otherwise innocent marketing techniques. That section says: "A person commits an offense if, with intent to obtain an economic benefit the person . . . (3) pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client."

The State intimates that the breadth of this subpart should not be troubling because this section does not regulate speech and therefore would not implicate the first amendment. We reject the State's contention. In the Fifth Circuit, when deciding whether particular conduct or actions constitute speech, "we ask whether an intent to convey a particularized message was present and whether the likelihood was great that the message would be understood by those who viewed it."

---

[6] Though courts should construe statutes to avoid constitutional infirmity, see United States v. Boerner, 505 F.2d 1064, 1067-68 (5th Cir. 1975), the district court's interpretation seems to have exceeded the scope of "construing" and entered the territory of "rewriting."

12

<u>Cabrol v. Town of Youngsville</u>, 106 F.3d 101, 109 (5th Cir. 1997) (citing <u>Texas v. Johnson</u>, 491 U.S. 397, 404 (1989)); <u>see also</u> <u>Jones v. Collins</u>, 132 F.3d 1048, 1054-55 (5th Cir. 1998). Here, offering to give money or anything of value to obtain employment in a professional capacity constitutes commercial speech. Chiropractors engage in such conduct with an intent to convey a particularized message: hire me, try my service. Moreover, those who receive the money or anything of value are likely to understand the message because rebates, free samples and risk-free trials of products are common marketing tools. Therefore, we find that § 38.12(a)(3) regulates speech, and we now consider its scope and legitimacy.

In so doing, we conclude that this section is neither reasonably tailored nor reasonably proportional to the harm the State seeks to prevent. It is not limited to in-person or telephonic solicitation of an injured or ill person; rather, this section facially applies to any advertising, including advertising via public media, that offers money or anything of value (e.g., a free adjustment) to induce a client to try chiropractic services. The section is not bounded by a time limit (such as <u>Went For It</u>'s 30 day moratorium) or target group (for instance, <u>Went For It</u>'s recent victims of

13

accidents). And the section criminalizes commercial speech that is both unobjectionable and unquestionably protected by the first amendment (e.g., a print advertisement offering a free adjustment to anyone interested). This is not the first time the State, in its zeal to prohibit "accident" telemarketing by chiropractors, has cast its nets too broadly. See <u>Innovative Database Systems v. Morales</u>, 990 F.2d 217, 220-222 (5th Cir. 1993) ("A total ban on the use of lawfully obtained, public information to contact any person who was recently involved in a motor vehicle accident . . . is too broad a prohibition to prevent the perceived evil.").

Given the poor fit between means and ends, H.B 1327 is unconstitutional as applied to chiropractors. We need not here determine the purview and legitimacy of the statute as it applies to other covered professionals. As the Court noted in <u>Edenfield</u>, "the constitutionality of a ban on personal solicitation will depend upon the identity of the parties and the precise circumstances of the solicitation." 507 U.S at 557.

### IV.

14

If a statute is so vague that it does not afford defendants fair notice of the proscribed conduct, then the statute offends the due process clause of the fourteenth amendment. See Stromberg v. California, 283 U.S. 359, 369 (1931) ("A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity [for free political discussion] is repugnant to the guaranty of liberty contained in the Fourteenth Amendment."); see also United States v. Lanier, 520 U.S. 259, 265 (1997); United States v. Harriss, 347 U.S. 612, 617 (1954).

Bailey argues that H.B. 1327 is void for vagueness because "it cannot mean what it says" and because law enforcement officials and the judiciary will read exceptions into the law. That the law cannot mean what it says does not make it vague; here, for instance, what H.B. 1327 forbids is clear, but also confounding in its scope. Similarly, the fact that the law may be susceptible to differing constructions by the judiciary and law enforcement officers does not create a vagueness problem where, as here, the text of the law is plain, though its breadth is unusual. The vagueness doctrine

15

is not a suitable vehicle for finding this statute unconstitutional.

**V.**

Since H.B. 1327 neither advances the state's interests materially and directly nor is it narrowly tailored, we REVERSE the district court's ruling and declare that the act is unconstitutional as applied to chiropractors.

REVERSED.